1
2
3
4
5
6
7
8

# IN THE UNITED STATES DISTRICT COURT

9

## FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11
CALVIN ANTHONY HEADSPETH, JR.,          CASE NO. CV F 06-01449 LJO WMW HC

12
                    Petitioner,          **ORDER DENYING PETITION FOR WRIT**
                                         **OF HABEAS CORPUS WITH**
13                                       **PREJUDICE; DIRECTING CLERK OF**
        vs.                              **COURT TO ENTER JUDGMENT FOR**
14                                       **RESPONDENT; DECLINING ISSUANCE**
MIKE KNOWLES, et al.,                    **OF CERTIFICATE OF APPEALABILITY**
15
                    Respondents.
16
_____/

17
        On October 6, 2006, Calvin Anthony Headspeth, Jr. ("Petitioner"), a *pro se* California prisoner,
18
filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254
19
("Petition").[1]  On September 25, 2007, Mike Knowles, et al. ("Respondents") filed an Answer to the
20
Petition.  On December 27, 2007, Petitioner filed a Traverse.  Thus, this matter is ready for decision.
21
                              **PROCEDURAL HISTORY**
22
        On February 19, 2003, a Kern County Superior Court jury convicted Petitioner of first degree
23
burglary (Cal. Penal Code § 460(a)) and receipt of stolen property (*id.* § 496(a)).  (Clerk's Tr. ("CT")
24
183, 185, 196.)  In a bifurcated proceeding, the trial court found true that Petitioner suffered two prior
25
serious or violent felonies within the meaning of California's Three Strikes law (Cal. Penal Code §§
26
27
_____

28
        [1]        Although petitions for habeas corpus relief are routinely referred to a Magistrate Judge, *see* L.R. 72-302,
the Court exercises its discretion to address the Petition pursuant to Local Rule 72-302(d).

1

1    667(c)-(j), 1170.12(a)-(e)), and suffered two prior serious felony convictions within the meaning of

2    California Penal Code section 667(a). (CT 192-93.) On March 19, 2003, the superior court sentenced

3    Petitioner to thirty-five years to life in state prison. (*Id.* 196-97.)

4         On March 25, 2003, Petitioner appealed his conviction to the California Court of Appeal. (CT

5    198.) On September 16, 2004, the court of appeal reversed Petitioner's conviction for receiving stolen

6    property, but otherwise affirmed the judgment including the prison term imposed. (Lodged Doc. ("LD")

7    2.) On October 26, 2004, Petitioner filed a petition for review in the California Supreme Court, which

8    summarily denied the petition on December 1, 2004. (LD 3-4.) On November 9, 2005, Petitioner filed

9    a habeas petition in the California Supreme Court, which summarily denied the petition on August 16,

10   2006. (LD 5-6.) On October 6, 2006, Petitioner filed the instant federal Petition.

11                              **FACTUAL BACKGROUND**[2]

12        During the early evening hours[3] on November 6, 2002, Peter Rajniak and his
     roommate, Jamayne Potts, left their apartment to get something to eat. Rajniak locked
13   the door to the apartment when they left. However, they left a window open in Potts's
     room. Approximately 45 minutes later, the men returned and were met by their basketball
14   coach, Brent Davis, who was waiting by their front door. Davis testified that he had
     arrived at the apartment at approximately 6 p.m. and knocked on the door, but no one
15   answered. He waited approximately five minutes before Potts and Rajniak returned.
     During that time he did not hear any noise coming from the apartment.
16        As Potts was unlocking the front door, the screen to Potts's window fell to the
     ground. Rajniak went inside and Potts and Davis remained outside to replace the window
17   screen. Rajniak went into the kitchen and saw a man in the hallway of the apartment. The
     man ran to the other side of the apartment while Rajniak ran outside and told Potts and
18   Davis someone was in the apartment. Meanwhile, the man went into Potts's room and
     jumped out of the window.
19        Potts testified that when the man jumped out of the window, he swung at Potts
     and told him to "get the fuck back." Potts and Rajniak recognized the man from seeing
20   him earlier in the evening when they left to get something to eat. The man had been
     standing in the parking lot and the men exchanged greetings. Rajniak, Potts and Davis
21   identified [Petitioner] as the burglar.
          After [Petitioner] jumped out of the window and ran away, the men immediately
22   called the police and reported the incident. Inside the apartment, Potts and Rajniak
     noticed that their luggage had been removed from the closet and packed with their
23   clothes and other belongings. Potts noted $1.75 in quarters was missing as well as his
     watch.

24   _____

25        2    Because Petitioner challenges the sufficiency of the evidence, the Court has reviewed, independently, the
     state court record. *See Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997). Based on this review, the Court adopts the
26   factual background from the September 16, 2004, California Court of Appeal opinion on direct review as a fair and accurate
     summary of the evidence presented at trial. *See id.*; *see also* 28 U.S.C. § 2254(d)(2), (e)(1).

27

          3    [California Court of Appeal footnote 2:] Rajniak testified they left the apartment at approximately 6 p.m.,
28   while Potts testified they left 30 to 45 minutes earlier.

                                        2

1    Immediately after [Petitioner] ran away, the men called the police. Officer Don
2    Reimer was dispatched to a burglary at 6:50 p.m. The men relayed what had happened
     and provided descriptions of the burglar. Rajniak described the man as a Black male with
     cornrow hair. Davis described the man as a Black male, 20-25 years old, five feet, 11
3    inches tall, 180 to 190 pounds, with cornrow hair and wearing a tan sweatshirt and dark
     pants. Potts described the man as a Black male, 20-25 years old, 185-190 pounds, with
4    cornrow hair and wearing a tan sweatshirt and dark jeans.[4]
5         After speaking with the police, Davis went home, retrieved his car, and drove
     around a nearby shopping center to see if he could find the burglar. As he was driving,
     Davis saw a man who he thought was the perpetrator. Davis drove by the man three times
6    to be sure it was the man and then he called the police. He was convinced it was the same
     person because he was in the process of taking out his braids and because he had on the
7    same clothing.
          At 6:48 p.m. on the night in question Bakersfield police officer Ofelio Lopez was
8    dispatched to a store to look for a Black male in his twenties wearing a black hooded
     jacket with a grayish sweatshirt, who was in the process of combing out his braids. Lopez
9    found [Petitioner], who matched the description, and seized a white metal watch from
     his pocket. Potts identified the watch as belonging to him. He was able to identify it due
10   to its brand name, distinctive color, and the fact that it was not working at the time.
          Approximately 30 minutes to an hour after speaking with the police, Rajniak,
11   Potts and Davis were individually taken to a nearby store to identify a person the police
     had detained. Each of the men separately identified [Petitioner] as the man who had been
12   in the apartment.

13   (LD 2 at 2-4.)

14                              **PETITIONER'S CLAIMS**

15   1.    Insufficient evidence supported Petitioner's first degree burglary conviction (Pet. 5);[5]

16   2.    Ineffective assistance of appellate counsel (*id.*); and

17   3.    The trial court improperly instructed the jury with California Jury Instructions - Criminal

18         ("CALJIC") 2.15 (*id.* 6).

19                               **STANDARD OF REVIEW**

20        The current Petition was filed after the Antiterrorism and Effective Death Penalty Act of 1996,

21   Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), was signed into law and is thus subject to its

22   provisions. *See Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997). The standard of review applicable to

23   Petitioner's claims is set forth in 28 U.S.C. § 2254(d), as amended by the AEDPA:

24        (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant

25

26        [4]    [California Court of Appeal footnote 3:] At trial a considerable amount of evidence was adduced regarding
     the witnesses [sic] descriptions of the perpetrator and whether [Petitioner] fit that description. As [Petitioner] has not raised
27   the sufficiency of the evidence to support the verdict, we will not recount that evidence here.

28        [5]    Although listed as his second claim, Petitioner's insufficient evidence claim will be addressed before
     Petitioner's other claims.  (*See* Pet. 5.)

                                        3

1  to the judgment of a State court shall not be granted with respect to any claim that was
2  adjudicated on the merits in State court proceedings unless the adjudication of the claim–
    (1) resulted in a decision that was contrary to, or involved an unreasonable
    application of, clearly established Federal law, as determined by the Supreme
3      Court of the United States; or
    (2) resulted in a decision that was based on an unreasonable determination of the
4      facts in light of the evidence presented in the State court proceeding.

5  28 U.S.C. § 2254(d).

6      Under the AEDPA, the "clearly established Federal law" that controls federal habeas review of

7  state court decisions consists of holdings (as opposed to dicta) of Supreme Court decisions "as of the

8  time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To determine

9  what, if any, "clearly established" United States Supreme Court law exists, the court may examine

10  decisions other than those of the United States Supreme Court. *LaJoie v. Thompson*, 217 F.3d 663, 669

11  n.6 (9th Cir. 2000). Ninth Circuit cases "may be persuasive." *Duhaime v. Ducharme*, 200 F.3d 597, 598

12  (9th Cir. 2000) (as amended). On the other hand, a state court's decision cannot be contrary to, or an

13  unreasonable application of, clearly established federal law if no Supreme Court precedent creates

14  clearly established federal law relating to the legal issue the habeas petitioner raised in state court.

15  *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004); *see also Carey v. Musladin*, 549 U.S. 70, 127 S. Ct.

16  649, 654 (2006).

17      A state court decision is "contrary to" clearly established federal law if the decision either applies

18  a rule that contradicts the governing Supreme Court law, or reaches a result that differs from the result

19  the Supreme Court reached on "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8

20  (2002) (per curiam); *Williams*, 529 U.S. at 405-06. When a state court decision adjudicating a claim is

21  contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by

22  § 2254(d)(1)." *Williams*, 529 U.S. at 406. However, the state court need not cite or even be aware of

23  the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court

24  decision contradicts them." *Early*, 537 U.S. at 8.

25      State court decisions which are not "contrary to" Supreme Court law may only be set aside on

26  federal habeas review "if they are not merely erroneous, but 'an *unreasonable* application' of clearly

27  established federal law, or are based on 'an *unreasonable* determination of the facts.'" *Early*, 537 U.S.

28  at 11 (*quoting* 28 U.S.C. § 2254(d)). Consequently, a state court decision that correctly identified the

4

governing legal rule may be rejected if it unreasonably applied the rule to the facts of a particular case. *Williams*, 529 U.S. at 406-10, 413; *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). However, to obtain federal habeas relief for such an "unreasonable application," a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." *Woodford*, 537 U.S. at 24-25, 27.  An "unreasonable application" is different from an "erroneous" or "incorrect" one. *Williams*, 529 U.S. at 409-10; *see also Woodford*, 537 U.S. at 25; *Bell v. Cone*, 535 U.S. 685, 686 (2002).

A state court factual determination must be presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

## DISCUSSION

### Claim One

Petitioner contends that insufficient evidence supported his conviction for first degree burglary. (Pet. 5.) Specifically, Petitioner claims that the witness testimonies at trial contradicted the description of the burglar provided to the police by the witnesses at the scene of the crime.  (*Id.*)  Petitioner states that he does not fit the profile of the burglar described at trial.  (*Id.*)

Petitioner did not raise this claim on direct review (*see* LD 1, 3), but did raise it in a habeas petition before the California Supreme Court (*see* LD 5).  The California Supreme Court summarily denied the habeas petition.  (LD 6.) While a state court's summary denial is considered to be on the merits, *see Hunter v. Aispuro*, 982 F.2d 344, 347-48 (9th Cir. 1992), here there is no "reasoned" state court decision, and the Court accordingly conducts an "independent review of the record" with respect to Petitioner's insufficient evidence claim.  *See Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "Independent review of the record" is not the equivalent of de novo review, as the Court must "still defer to the state court's ultimate decision." *Allen v. Ornoski*, 435 F.3d 946, 955 (9th Cir.), *cert. denied*, 546 U.S. 1136 (2006).

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime

5

1   with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  Under *Jackson v. Virginia*, 443

2   U.S. 307 (1979), "[a] petitioner for a federal writ of habeas corpus faces a heavy burden when

3   challenging the sufficiency of the evidence used to obtain a state conviction on federal due process

4   grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  The Supreme Court has held that "the

5   relevant question is whether, after viewing the evidence in the light most favorable to the prosecution,

6   *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

7   doubt." *Jackson*, 443 U.S. at 319; *see also Wright v. West*, 505 U.S. 277, 284 (1992).  In addition, the

8   AEDPA requires the federal court to "apply the standards of *Jackson* with an additional layer of

9   deference." *Juan H.*, 408 F.3d at 1274.  The federal court must ask "whether the decision of the

10  California Court of Appeal reflected an 'unreasonable application' of *Jackson* and *Winship* to the facts

11  of this case." *Id.* at 1275 & n.13.  The California standard for determining the sufficiency of evidence

12  to support a conviction is identical to the *Jackson* standard.  *See People v. Johnson*, 26 Cal. 3d 557, 576

13  (1980).

14        The federal court must refer to the substantive elements of the criminal offense as defined by

15  state law and look to state law to determine what evidence is necessary to convict on the crime charged.

16  *Jackson*, 443 U.S. at 324 n.16; *Juan H.*, 408 F.3d at 1275.  The trier of fact has the responsibility to

17  determine the credibility of witness testimony shown to be inconsistent.  *United States v. Ginn*, 87 F.3d

18  367, 369 (9th Cir. 1996).  "Circumstantial evidence and inferences drawn from it may be sufficient to

19  sustain a conviction." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation and internal

20  quotation marks omitted).  When the factual record supports conflicting inferences, the federal court

21  must presume, even if it does not affirmatively appear on the record, that the trier of fact resolved any

22  such conflicts in favor of the prosecution, and the court must defer to that resolution.  *Jackson*, 443 U.S.

23  at 326.

24        Petitioner argues that the testimony given by Rajniak, Potts, and Davis regarding the physical

25  description and clothes of the burglar was inconsistent with the witnesses' description given at the scene

26  of the crime.  (Pet. 5.)  Specifically, Petitioner disputes the testimony describing the burglar's physical

27  description, hair style, and type of clothing as inconsistent with the witnesses' description given at

28  Rajniak and Potts' apartment immediately after the burglary.  (*Id.*)  Even assuming, without deciding,

6

any inconsistency in the witness testimonies, it was the jury's responsibility to determine witness credibility and to determine if the descriptions of the burglar were incredible. *See Jackson*, 443 U.S. at 326; *Ginn*, 87 F.3d at 369. Even without the physical descriptions, Rajniak, Potts, and Davis each identified Petitioner in court as the burglar they saw in the apartment. (Rep.'s Tr. ("RT") 22-23, 28-29, 48-49, 65-66, 115-16, 124); *see Ginn*, 87 F.3d at 369 ("[T]he testimony of one witness, if solidly believed, is sufficient to prove the identity of a perpetrator of crime." (*quoting United States v. Smith*, 563 F.2d 1361, 1363 (9th Cir. 1977))). In addition, Rajniak and Potts testified that the watch found on Petitioner's person belonged to Potts. (*Id.* 29-30, 43-44, 62-63.)

Viewing the evidence in the light most favorable to the prosecution and presuming the jury resolved all conflicting inferences from the evidence against Petitioner, the Court finds that a rational trier of fact could find the essential elements of first degree burglary beyond a reasonable doubt. *Jackson*, 443 U.S. at 326; *Walters*, 45 F.3d at 1358.

Accordingly, the Court finds that the California Supreme Court's rejection of Petitioner's insufficient evidence claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, habeas relief is not warranted on this claim.

**Claim Two**

Petitioner next asserts that his appellate counsel was ineffective for failing to raise (1) an insufficient evidence claim as to Petitioner's burglary conviction and (2) a claim challenging the "infield line up" as "tainted." (Pet. 5.) Petitioner did not raise this claim on direct review (*see* LD 1, 3), but did raise it in a habeas petition before the California Supreme Court (*see* LD 5). Because the California Supreme Court summarily denied the habeas petition (*see* LD 6) and there is no reasoned opinion, the Court accordingly conducts an independent review of the record. *See Delgado*, 223 F.3d at 981-82; *Hunter*, 982 F.2d at 347-48.

For a petitioner to prevail on an ineffective assistance of counsel claim, he must show: (1) that counsel's performance was deficient, and (2) that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if the petitioner cannot sufficiently

1   prove one of them. *Id.* at 697; *Thomas v. Borg*, 159 F.3d 1147, 1151-52 (9th Cir. 1998).

2         To prove deficient performance, a petitioner must show that counsel's representation fell below

3   an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. Because of the difficulty in

4   evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the

5   wide range of reasonable professional assistance." *Id.* at 689. Only if counsel's acts or omissions,

6   examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally

7   competent assistance will the petitioner prove deficient performance. *Id.* at 690; *United States v.*

8   *Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The petitioner must overcome the presumption

9   that, under the circumstances, the challenged action "might be considered sound trial strategy."

10  *Strickland*, 466 U.S. at 689.

11        Establishing counsel's deficient performance does not warrant setting aside the judgment if the

12  error had no effect on the judgment. *Id.* at 691; *Seidel v. Merkle*, 146 F.3d 750, 757 (9th Cir. 1998). A

13  petitioner must show prejudice such that there is a reasonable probability that, but for counsel's

14  unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 694. Thus, the

15  petitioner will only prevail if he can prove that counsel's errors resulted in a "proceeding [that] was

16  fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993).

17        The Strickland standard also applies to claims of ineffective assistance of appellate counsel.

18  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Appellate counsel does not have a constitutional duty

19  to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

20  Counsel "must be allowed to decide what issues are to be pressed"; otherwise, the ability of counsel to

21  present the client's case in accord with counsel's professional evaluation would be "seriously

22  undermined." *Id.* There is, of course, no obligation to raise meritless arguments on a client's behalf.

23  *See Strickland*, 466 U.S. at 687-88.

24        As discussed in Claim One, *supra*, sufficient evidence supported Petitioner's first degree

25  burglary conviction. As a result, Petitioner identifies no grounds establishing ineffective assistance of

26  appellate counsel based on failure to assert Claim One on direct appeal, as an attorney does not provide

27  ineffective assistance for failing to raise meritless claims on appeal. *See Wildman v. Johnson*, 261 F.3d

28  832, 840-42 (9th Cir. 2001) (finding appellate counsel's failure to raise issues on direct appeal does not

8

constitute ineffective assistance when appeal would not have provided grounds for reversal).

In addition, appellate counsel's failure to raise a claim challenging the field lineup did not prejudice Petitioner or constitute deficient performance.  Even assuming the field lineup was unduly suggestive, other reliable identification evidence supported the verdict, including Rajniak, Potts, and Davis' identification of Petitioner at trial.  Furthermore, the retrieval of Potts' watch from Petitioner's person constituted non-identification evidence to support Petitioner's conviction.  Appellate counsel could also reasonably determine that because sufficient evidence supported the burglary conviction, including the courtroom identification and Potts' watch, the potential exclusion of the field lineup identification would achieve no measurable result for Petitioner on appeal.  Appellate counsel could reasonably focus on stronger claims, as demonstrated by appellate counsel's success in overturning Petitioner's conviction of receiving of stolen property.  *See Jones*, 463 U.S. at 751; *see also Smith*, 528 U.S. at 288 (stating appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal").

Based on the foregoing, Petitioner has failed to show appellate counsel's performance was deficient.  *Strickland*, 466 U.S. at 687-88.  Moreover, even if appellate counsel's performance was deficient, Petitioner has failed to show the result of the direct appeal would have been any different.  *Id.*

Accordingly, the Court finds that the California Supreme Court's rejection of Petitioner's ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.  Thus, habeas relief is not warranted on this claim.

### **Claim Three**

In his third and final claim, Petitioner contends that the trial court committed error by instructing the jury with CALJIC 2.15.  (Pet. 6.)[6]  Petitioner states that CALJIC 2.15 lessens the prosecution's

---

[6]   CALJIC 2.15 as given to the jury states:
   If you find that defendant was in conscious possession of recently stolen property, the fact of that possession is not by itself sufficient to permit an inference that the defendant is guilty of the crime of burglary, or of receiving stolen property. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.
   As corroboration, you may consider the attributes of possession–time, place and manner, that the

1   burden of proving guilt beyond a reasonable doubt.   (*Id.*)   Because the California Supreme Court

2   summarily denied this claim on direct review (*see* LD 3-4), the Court must "look through" to the last

3   reasoned decision, that of the California Court of Appeal on direct review.  *See Ylst v. Nunnemaker*, 501

4   U.S. 797, 803-05 (1991).   In rejecting Petitioner's claim, the court of appeal stated:

> [Petitioner] contends the trail [sic] court erred in instructing the jury with
> CALJIC No. 2.15. Specifically he argues the "slight evidence" language of the instruction
> undermines the presumption of innocence and impermissibly lessened the People's
> burden of proving guilt beyond a reasonable doubt. However, CALJIC No. 2.15 has
> repeatedly withstood challenges on the grounds that it lessens the burden of proof or
> otherwise denies a defendant due process of law. (See, e.g., *People v. Yeoman* (2003) 31
> Cal.4th 93, 131; *People v. Prieto* (2003) 30 Cal.4th 226, 248; *People v. Hernandez*
> (1995) 34 Cal.App.4th 73, 81; *People v. Esquivel* (1994) 28 Cal.App.4th 1386,
> 1400-1401; *People v. Gamble* (1994) 22 Cal.App.4th 446, 452, 454-455; *People v.
> Anderson* (1989) 210 Cal .App.3d 414, 430-431.) We agree.
>   The cases relied upon by [Petitioner] (*United States v. Gray* (5th Cir. 1980) 626
> F.2d 494, 500-501; *United States v. Partin* (5th Cir. 1977) 552 F.2d 621, 628; *United
> States v. Hall* (5th Cir. 1976) 525 F.2d 1254, 1255-1256; *United States v. Brasseaux* (5th
> Cir. 1975) 509 F.2d 157, 162) to support his argument are inapposite because they all
> address a conspiracy instruction tied to the substantive element of a conspiracy charge.
> In the above cases, the jury was instructed that only "slight" evidence was necessary to
> establish a defendant's participation in a conspiracy. The federal courts held such an
> instruction was in error because it lowered the reasonable doubt standard. (*United States
> v. Gray*, *supra*, 626 F.2d at p. 500; *United States v. Partin*, *supra*, 552 F.2d at p. 628;
> *United States v. Hall*, *supra*, 525 F.2d at p. 1255-1256; *United States v. Brasseaux*,
> *supra*, 509 F.2d at p. 161.) Here, the issue before the jury was whether an inference that
> [Petitioner] committed the charged offense could be drawn based on his possession of
> stolen property. We do not view the instruction as susceptible to misinterpretation of the
> prosecution's burden of proof.

(LD 2 at 4-6 (footnote omitted).)

       To the extent Petitioner contends that the trial court's CALJIC 2.15 instruction violates state law,

such a claim is not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991).  "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of

a due process violation."  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).  Rather, the question is

whether "the ailing instruction by itself so infected the entire trial that the resulting conviction violates

due process." *Estelle*, 502 U.S. at 72 (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *Henderson

v. Kibbe*, 431 U.S. 145, 154 (1977).  An ambiguous or erroneous instruction is reviewed to determine

"whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way"

---

defendant had an opportunity to commit the crime charged, the defendant's conduct, and any other
evidence which tends to connect the defendant with the crime charged.
(CT 148.)

1   that violated the Constitution.  *Estelle*, 502 U.S. at 72.  "The burden of demonstrating that an erroneous

2   instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a

3   state court's judgment is even greater than the showing required to establish plain error on direct

4   appeal."  *Henderson*, 431 U.S. at 154.  The instruction must be considered in the context of the trial

5   record and the instructions as a whole.  *Estelle*, 502 U.S. at 72.

6         A jury instruction is constitutionally sound if it creates a permissive inference that allows, but

7   does not require, the jury to infer an essential fact from proof of another fact so long as "the inferred fact

8   is more likely than not to flow from the proved fact on which it is made to depend."  *Schwendeman v.*

9   *Wallenstein*, 971 F.2d 313, 316 (9th Cir. 1992) (citations and internal quotation marks omitted); *see*

10  *County Court v. Allen*, 442 U.S. 140, 157 (1979) (stating permissive inferences allow but do not require

11  the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and place no

12  burden of any kind on the defendant).

13        Here, the first two sentences of CALJIC 2.15 state:

14              If you find that defendant was in conscious possession of recently stolen property,
        the fact of that possession *is not by itself sufficient to permit an inference* that the
15      defendant is guilty of the crime of burglary, or of receiving stolen property.  Before guilt
        *may* be inferred, there must be corroborating evidence tending to prove defendant's guilt.

16
    (CT 148 (emphasis added).)  These two sentences (1) make clear that the requisite corroborating

17  evidence creates a permissive inference rather than a mandatory presumption, and (2) do not purport to

18  modify or lessen the State's burden of proof.  *See, e.g.*, *Montanez v. Adams*, No. 1:07-CV-00264 LJO

19  SMS HC, 2008 WL 822173, at *7 (E.D. Cal. Mar. 27, 2008) (holding CALJIC 2.15 allows a permissive

20  inference and does not modify prosecution's burden of proof); *People v. Barker*, 91 Cal. App. 4th 1166,

21  1174 (2001) ("[CALJIC 2.15] is a permissive, cautionary instruction which inures to a criminal

22  defendant's benefit by warning the jury not to infer guilt merely from a defendant's conscious possession

23  of recently stolen goods, without at least some corroborating evidence tending to show the defendant's

24  guilt.); *see also Barnes v. United States*, 412 U.S. 837, 841 (1973) (upholding jury instruction that

25  allowed the jury to infer guilt from the "unexplained possession of recently stolen property").

26        In addition, reading CALJIC 2.15 together with the other instructions given to the jury, *see*

27  *Estelle*, 502 U.S. at 72, CALJIC 2.15 does not shift the burden of proof to Petitioner or allow the jury

28

11

1   to infer an improper fact. *See Schwendeman*, 971 F.2d at 316. The trial court instructed the jury that

2   (1) guilt must be established beyond a reasonable doubt (CT 158-59) and (2) the burden of proof is on

3   the prosecution (*id.* 158-59). A jury is presumed to have followed the court's instructions. *See Weeks*

4   *v. Angelone*, 528 U.S. 225, 234 (2000).

5         Furthermore, there was more than "slight" corroborating evidence that permitted the inference

6   of Petitioner's guilt. (*See* CALJIC 2.15.) As stated in Claim One, *supra*, Rajniak, Potts, and Davis each

7   identified Petitioner in court as the burglar they saw in the apartment. (RT 22-23, 28-29, 48-49, 65-66,

8   115-16, 124); *see Ginn*, 87 F.3d at 369. The witness identifications coupled with Rajniak and Potts'

9   testimony that the watch found on Petitioner's person belonged to Potts *permitted* but not *required* the

10  jury to infer the essential facts of burglary. *See Schwendeman*, 971 F.2d at 316.

11        Accordingly, the Court finds that CALJIC 2.15 as given at Petitioner's trial did not "so infect[]

12  the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72. Even

13  assuming some error in CALJIC 2.15, it did not have a "substantial and injurious effect or influence in

14  determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). Without the

15  CALJIC 2.15 instruction, there was sufficient evidence, as explained in Claim One, *supra*, for the jury

16  to find Petitioner guilty of first degree burglary.

17        Based on the foregoing reasons, the Court finds that the California courts' rejection of

18  Petitioner's instructional error claim was neither contrary to, nor an unreasonable application of, clearly

19  established federal law as determined by the United States Supreme Court. Thus, habeas relief is not

20  warranted on this claim.

21  <u>**Certificate of Appealability**</u>

22        An applicant seeking to appeal a district court's dismissal of a habeas petition under 28 U.S.C.

23  § 2254 must first obtain a certificate of appealability ("COA") from a district judge or circuit judge. 28

24  U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A judge should either grant the COA or state reasons

25  why it should not issue, and the COA request should be decided by a district court in the first instance.

26  Fed. R. App. P. 22(b)(1); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997).

27        The applicant for a COA must make a "substantial showing of the denial of a constitutional

28  right." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). A "substantial showing"

is defined as a demonstration (1) that the issues are debatable among jurists of reason; (2) that a court could resolve the issues differently; or (3) that issues are adequate to deserve encouragement to proceed further.  *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *see Slack*, 529 U.S. at 483-84 (stating that except for substituting the word "constitutional" for the word "federal," § 2253 codified the pre-AEDPA standard announced in *Barefoot v. Estelle*).  When, as present here, a district court has rejected constitutional claims on their merits, the COA standard is straightforward.  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack*, 529 U.S. at 484.

This Court has reviewed the record of this case and finds that reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong.  On the merits of this case, reasonable jurists would not debate the constitutionality of Petitioner's conviction and sentence.  Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION AND ORDER

For the reasons discussed above, the Court DENIES the Petition for Writ of Habeas Corpus with prejudice and DECLINES the issuance of a certificate of appealability.  The Clerk of Court is ORDERED to enter Judgment for Respondents and to close Case No. CV F 06-01449 LJO WMW HC.

IT IS SO ORDERED.

Dated:    __January 7, 2009__              _____/s/ Lawrence J. O'Neill_____
                                                    UNITED STATES DISTRICT JUDGE